**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ProDox, LLC, | Case No.: 2:20-cv-02035-JAD-NJK |
| Plaintiff | **Order Granting in Part and Denying in Part Cross-motions for Summary Judgment** |
| v. | |
| Professional Document Services, Inc., | [ECF Nos. 66, 87] |
| Defendant | |

Plaintiff ProDox, LLC sues Professional Document Services, Inc. (PDS) for breaching the parties' 2006 settlement agreement and infringing on ProDox's trademark "ProDoc." Both parties move for summary judgment. PDS argues that it is entitled to judgment on all claims because a notice-and-cure provision in the settlement agreement prevents ProDox's recovery and ProDox failed to provide a computation of actual damages to support its trademark-infringement claims. ProDox argues that it is entitled to judgment because PDS admits that it breached the agreement and the notice-and-cure provision does not bar ProDox from seeking liquidated damages.

I find that the notice-and-cure provision does not bar ProDox's suit or its recovery based on traditional rules of contract interpretation. And because there is no genuine dispute that PDS breached when it serviced customers under the name "ProDoc | Kytel" from 2017 through 2020, I grant ProDox partial summary judgment on the liability portion of its contract claim. But because a genuine dispute exists about the amount of damages it is owed under the liquidated-damages provision, I deny summary judgment on damages for the breach. I grant PDS summary judgment on ProDox's claim for breach of the implied covenant of good faith and fair dealing because there is no evidence of any breach beyond the contract's express terms. And I grant

PDS summary-judgment relief from actual damages or disgorgement of profits for ProDox's trademark-infringement and unfair-competition claims because there is no evidence to support such damages. So this case proceeds to trial on ProDox's claims for trademark infringement, unfair competition, and declaratory judgment, and the question of damages for PDS's breaches of the settlement agreement. But first, I order the parties to a settlement conference with the magistrate judge.

## Facts

**A.     The 2006 settlement agreement**

In 2005, ProDox and PDS were involved in litigation over their rights to the trademark "ProDoc."[1] They settled that suit in 2006 and stipulated that PDS would be permanently enjoined from using the "ProDoc" trademark in any business it conducts outside of the State of California.[2] Section 4(c) of the settlement agreement states that it will be a violation of the stipulated, permanent injunction for PDS to:

> i.     Solicit, either directly or indirectly, any business outside of the State of California under the name "ProDoc" or any confusingly similar name . . . .
>
> ii.    With the exception of the provisions in Section 8(b) of the Agreement, perform any service or receive any income from any entity outside of the State of California that is not, as of the date of this agreement, a current client of PDS under the name "ProDoc" or any confusingly similar name . . . . ; [or]
>
> iii.   Directly advertise, using any means with the exception of its website subject of the terms of Sections 4(c)(i-ii) above, anywhere outside of the State of California for goods or services under the name "ProDoc" or any confusingly similar name . . . .[3]

---

[1] ECF No. 109-1 at ¶ 7; *see also ProDox, LLC v. Pro. Document Servs.*, Case No. 2:05-cv-00596-BES-PAL.

[2] ECF No. 66-1 at 21.

[3] *Id.* at 23. The referenced "[s]ection 8(b)" states that, "[i]n the case where PDS obtains, or has maintained a client with officers located within and/or outside the State of California, it shall not

2

The agreement also required PDS to add to its website the disclaimer that "ProDoc is in no way affiliated with ProDox, LLC and its website prodox.net."[4]

The parties also agreed that, "in the event of any violation of the terms of the permanent injunction in this agreement, PDS will be liable to ProDox for liquidated damages in the amount of . . . $2,500.00 for each violation" and "a one[-]time lump payment of . . . $15,000.00" for PDS's "first violation."[5] The parties "expressly agree[d] that liquidated damages are appropriate and fully justified under the circumstances, that the amounts set forth above are fair and reasonable under the circumstances existing at this time, and that proof of the amount of actual damages would be difficult and burdensome for all concerned."[6] They also included a notice-and-cure clause that obligates ProDox to give PDS written notice of any violation of the agreement before filing suit: "ProDox agrees that in the event of a perceived violation of this [a]greement, prior to commencing any action for recovery, ProDox shall first notify PDS of the perceived violation in writing . . . and that PDS shall have thirty [] calendar days in which to cure."[7]

**B.     ProDox's demand letter**

In 2020, ProDox sent PDS a letter claiming that "sometime around 2017" PDS started using the name "ProDoc | Kytel" on its website to advertise and conduct business outside of

---

be a breach of this agreement to provide services, or to solicit business, to that client within the State of California." *Id.*
[4] *Id.* at 24 (cleaned up).
[5] *Id.* at 24.
[6] *Id.*
[7] *Id.*

3

California.[8] ProDox indicated that it learned of PDS's name change when it received "misdirected communications intended for PDS."[9] ProDox asserted in that letter that PDS thus violated section 4 of the agreement by "engaging in soliciting and conducting business with customers outside of California."[10] ProDox also noted that PDS removed the required disclaimer from its website in 2017.[11] ProDox demanded that PDS "cease any further use of ProDoc | Kytel . . . on its website and URL . . . [and] immediately add the necessary disclaimer."[12] It asked PDS to "provide a full accounting of any business conducted since PDS began using its infringing website[] or any other advertising that used the word [ProDoc] to target business outside of California" so that ProDox could "determine the proper and accurate extent of [its] damages . . . ."[13] ProDox acknowledged that the agreement contains a notice-and-cure provision but maintained that "curing any defect does not prohibit ProDox from seeking liquidated damages for any violations."[14] And ProDox asserted that it "considers any instance where PDS has solicited and obtained a customer outside of California as a separate violation of the [a]greement."[15]

---

[8] ECF No. 109-10 at 2.
[9] *Id.* at 3.
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

C. **The instant litigation**

PDS removed all references to ProDoc | Kytel from its website and added the required disclaimer within thirty days of ProDox's notice.[16] But it refused to provide the requested accounting, arguing that ProDox's "contention that [it] is entitled to damages notwithstanding PDS's cure of the alleged violations makes no sense" and would "render the notice[-]and[-]cure provision contained in Section 5(a) meaningless."[17] ProDox filed this suit two months later, asserting claims for breach of the settlement agreement, trademark infringement, unfair competition, and breach of the implied covenant of good faith and fair dealing.[18] ProDox also seeks a declaratory judgment that PDS violated the terms of the stipulated injunction.[19]

The parties now cross-move for summary judgment.[20] PDS contends that (1) the agreement's notice-and-cure provision bars ProDox from maintaining this action because PDS cured all of the noticed breaches and (2) all of ProDox's claims otherwise fail.[21] ProDox argues that it is entitled to summary judgment on all claims because the plain language of the notice-and-cure provision does not prevent suit, PDS committed an incurable breach of the agreement when it continuously serviced non-California customers under the ProDoc | Kytel name, and

---

[16] *See* ECF No. 98-10. ECF No. 98 was stricken by court order during a motions hearing held on July 26, 2022. ECF No. 107. PDS refiled its opposition but failed to refile the attached exhibits. See ECF No. 112. So, when referencing the exhibits and in the interest of justice, I cite to the stricken documents at ECF No. 98, but when referencing PDS's arguments in opposition to ProDox's summary-judgment motion, I cite to ECF No. 112. In the future, counsel is advised to refile all portions of a corrected document, including exhibits, when the original document is struck by the court.

[17] *Id.* at 2, 3.

[18] ECF No. 1.

[19] *Id.* at 5.

[20] ECF No. 66 (PDS's motion); ECF No. 87 (ProDox's motion). ProDox filed a corrected version of its motion at ECF No. 108. I cite to that corrected version throughout this order.

[21] ECF No. 66.

ProDox is entitled to liquidated damages for each time PDS provided services to those customers.[22]

### Discussion

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[23] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[24] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[25] "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[26]

**A.    ProDox is entitled to summary judgment on its breach-of-contract claim as to liability only.**

To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.[27] Courts must interpret and enforce contracts as they are written, and they must

---

[22] ECF No. 108.

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[24] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[25] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[26] *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[27] *Richardson v. Jones*, 1 Nev. 405 (Nev. 1865); *Med. Providers Fin. Corp. II v. New Life Cntrs., LLC,* 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011).

avoid "interpolat[ing] in a contract what the contract does not contain."[28] Contracts should be construed so that "every word [is] given effect if at all possible" and no provision is rendered meaningless.[29] And "[c]ontractual provisions should be harmonized whenever possible and construed to reach a reasonable solution."[30] The parties do not dispute that the settlement agreement is a valid contract, so I address only the remaining elements using these traditional tenets of contract interpretation.

        **1.**        **The agreement's notice-and-cure provision does not bar suit or impair ProDox's entitlement to liquidated damages.**

The agreement's notice-and-cure provision states that "ProDox agrees that in the event of a perceived violation of this [a]greement, prior to commencing any action for recovery, ProDox shall first notify PDS of the perceived violation in writing . . . and that PDS shall have thirty [] calendar days in which to cure."[31] PDS asserts that ProDox's August 2020 letter raised only two perceived breaches of the agreement: PDS's use of the ProDoc | Kytel name and PDS's failure to include the required disclaimer on its website.[32] Because the parties do not dispute that PDS ceased those violations within the 30-day cure period, PDS argues that the notice-and-cure provision unambiguously bars this suit.[33] ProDox responds that, while it was required to give

---

[28] *State Dep't of Transp. v. Eighth Jud. Dist. Ct.*, 402 P.3d 677, 683 (Nev. 2017); *see also Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 20 (Nev. 2001) ("It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written.").

[29] *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013) (citations omitted).

[30] *Eversole v. Sunrise Villas VII Homeowners Ass'n*, 925 P.2d 505, 509 (Nev. 1996) (citations omitted).

[31] ECF No. 66-1 at 24.

[32] *See* ECF No. 66 at 19.

[33] *Id.*

7

notice and the opportunity to cure prior to filing suit, the agreement expressly allows it to seek liquidated damages for all violations regardless of cure and that PDS's numerous incidents of servicing non-California customers between 2017 and 2020 were past violations that PDS did not and could not cure.[34]

The plain and unambiguous language of the agreement supports ProDox's interpretation. The liquidated-damages provision is absolute: it stipulates that "in the event of *any violation* of the terms of the permanent injunction in this agreement, PDS *will be liable* to ProDox for liquidated damages . . . ."[35] The agreement does not limit such damages to uncured violations or otherwise premise the availability of liquidated damages on PDS's failure to cure when notified of a perceived violation. Rather, it gives PDS the opportunity to cease any ongoing violations to prevent ProDox from going to court to enforce the permanent injunction—it does not prevent ProDox from assessing liquidated damages based on violations that have already occurred.

So, contrary to PDS's suggestion, allowing ProDox to pursue liquidated damages does not render the notice-and-cure provision "superfluous"; the provision still prevents litigation if PDS fully cures by ceasing its violations and paying the liquidated damages associated with those violations. Indeed, it's PDS's interpretation that would render a provision superfluous: because the liquidated-damages clause expressly states that PDS will be liable for such damages "in the event of any violation,"[36] reading the notice-and-cure provision to discharge PDS's obligation to pay liquidated damages in the event it merely ceases ongoing violations would render meaningless the "any violation" language in the damages clause. The circumstances of

---

[34] ECF No. 109 at 17–27; *see also* ECF No. 108 at 15–23.
[35] ECF No. 66-1 at 23–24 (emphasis added).
[36] *Id.* at 23.

this case show the effect of these two provisions working in concert—PDS was able to cure its ongoing violations and thereby mitigate its future liability, but PDS remains liable for the contractual damages it agreed to pay for the completed breaches. Such a result is unambiguously intended by the agreement's express language and consistent with the fundamental tenets of contract interpretation.[37]

PDS's argument that it cured all of the perceived breaches outlined in ProDox's August 2020 notice-and-cure letter understates the scope of ProDox's allegations. The letter identified the two breaches PDS focuses on, but ProDox also accused PDS of "engaging in soliciting and conducting business with customers outside of California," informed PDS that it considered "any instance where PDS has solicited and obtained a customer outside of California as a separate violation of the agreement," and demanded that PDS "provide a full accounting of any business conducted since PDS began using its infringing website . . . to target business outside of California."[38] PDS does not contend—and the record does not support—that it cured its perceived violation of serving customers outside of California under the ProDoc mark. So the agreement's notice-and-cure provision does not bar ProDox from bringing suit on those breaches.

**2. PDS breached the agreement when it served customers outside of California using the ProDoc mark.**

The settlement agreement prohibits PDS from "perform[ing] any service or receiv[ing] any income from any entity outside of the State of California that [was] not, as of [July 19, 2006], a current client of PDS under the name 'ProDoc' or any confusingly similar name

---

[37] *See supra* at pages 6–7.
[38] ECF No. 109-10 at 4.

thereof."[39]  ProDox contends that PDS violated the agreement's permanent injunction when it served customers outside of California under ProDoc | Kytel from April 2017 through September 2020.[40]  As support for this theory, ProDox offers the deposition testimony of PDS's president and 30(b)(6) witness, Kyle Lum, as well as a customer list that PDS produced in discovery, to show that PDS serviced customers outside of California that it did not have a pre-agreement relationship with.

 This evidence establishes without material dispute that PDS served customers outside of the State of California while advertising under the name ProDoc | Kytel from April 2017 through September 2020.[41]  Lum testified that PDS "had interactions with firms outside the State of California" after 2017, despite knowing that the settlement agreement "effectively prohibited [it] from . . . servicing [and] receiving income from customers outside of California."[42]  And in a separate deposition in his capacity as PDS's 30(b)(6) witness, Lum identified ten customers on PDS's customer list that the company provided services to in the 2017–2020 time period while the company was called ProDoc | Kytel.[43]  Plus PDS admitted in its responses to ProDox's requests for admission that, "between approximately April 2017 to late August/early September 2020, [PDS's] website contained the words ProDoc | Kytel" and that between the same time

---

[39] ECF No. 66-1 at 23.

[40] ProDox's complaint lists other violations of the agreement—namely, PDS's name change in 2017 and its failure to have the disclaimer on its website from 2017 through 2020.  But ProDox does not move for summary judgment on those breaches, so I consider only the breach that ProDox discusses in its motion: PDS providing services to customers under the ProDoc | Kytel mark from April 2017 through September 2020.  See ECF No. 108.

[41] See ECF No. 88-1 at 2–5 (PDS's customer and transaction list, filed under seal); ECF No. 88-1 at 6–16 (portions of Lum's 30(b)(6) deposition, filed under seal); ECF No. 108-6 at 3–4 (portions of Lum's second deposition).

[42] ECF No. 108-6 at 3, lines 22–24; 4, lines 2–3; 6, lines 17–22.

[43] ECF No. 88-1 at 8, lines 18–20; 9, lines 6–7, 15, 23–25.

period, PDS "serviced customers that reside outside of California."[44]  PDS also submitted a declaration by Kyle Lum in which he states that his non-California clients were obtained after 2011, when he started Kytel—a business to provide litigation-support services outside of California—but before 2017, when he merged his two businesses into ProDoc | Kytel.[45]  Under the express terms of the contract, those admissions undisputedly amount to "perform[ing] any service or receiv[ing] any income from any entity outside of the State of California that is not, as of the date of this Agreement, a current client of PDS under the name 'ProDoc' or any confusingly similar name thereof."[46]

PDS also argues that ProDox cannot show evidence of confusion, but in the contract itself, PDS expressly "agree[d] to waive the defense[] of . . . likelihood of confusion," a waiver that it conveniently ignores in its briefing.[47]  So I find that there is no genuine dispute of material fact that PDS breached the settlement agreement when it serviced non-California customers under the ProDoc | Kytel name from April 2017 through September 2020 and that ProDox is entitled summary judgment as to PDS's liability for that portion of ProDox's breach-of-contract claim.

---

[44] ECF No. 117-1 at 4 (PDS's request-for-admission responses).  PDS objects to ProDox's failure to produce this document in its reply and contends that I should not consider it.  ECF No. 121.  But ProDox submitted the RFAs to respond to PDS's opposition argument that it had not admitted breach.  *See* ECF No. 117 at 4.  Submitting evidence in response to an argument raised in opposition does not violate the general rule that new arguments should not be raised in a reply brief.

[45] ECF No. 98-12 at 2–3.

[46] ECF No. 66-1 at 23.

[47] *Id.* at 22.

### 3. ProDox has not shown that summary judgment is merited as to customers obtained while PDS was operating as something other than ProDoc | Kytel.

However, to the extent ProDox seeks judgment on its repeated assertion that PDS "obtained" these non-California customers in violation of the agreement, I deny request. Lum's declaration directly contradicts the assertion that PDS obtained those customers under the ProDoc | Kytel name. He explains that he operated two companies: PDS to serve California customers, and Kytel to serve everyone else.[48] When he merged the companies under the ProDoc | Kytel name in April 2017, his existing Kytel clients continued to be served—but now under the ProDoc | Kytel name.[49] In short, Lum avers that he did not "obtain" any non-California customers while using the ProDoc mark.[50] ProDox offers no evidence or argument to dispute that representation. So, to the extent that ProDox moves for summary judgment on the theory that PDS "obtained" customers in violation of the agreement, that request is denied and summary judgment is granted to PDS as to that allegation.

And to the extent that ProDox seeks some form of injunction against PDS's continued service of those California customers, that relief is unavailable because the agreement does not prohibit PDS from continuing to serve those properly obtained customers under a name other than ProDoc; it just prevents PDS from performing services to businesses outside of California "under the name ProDoc or any confusingly similar name."[51] The parties do not dispute that PDS no longer uses that name. So a finding that PDS remains in violation of the injunction by continuing to serve those customers is not supported by the express terms of the agreement.

---

[48] ECF No. 98-12 at 2–3.
[49] *Id.*
[50] *Id.* at 3.
[51] ECF No. 66-1 at 23.

### 4. The liquidated-damages provision is not an enforceable penalty.

PDS next contends that the liquidated-damages provision amounts to a penalty and is therefore unenforceable.[52] The Nevada Supreme Court has held "that liquidated[-]damages provisions are generally prima facie valid, and the party challenging the provision must establish that the provision amounts to a penalty."[53] The "distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages [are] the sum to be paid in the event of non-performance."[54] "To prove that such a provision constitutes a penalty, the challenging party must persuade the court that the liquidated damages are disproportionate to the actual damages sustained by the injured party."[55]

In challenging the instant provision as a penalty, PDS relies heavily on *Prothera, Inc. v. Ye,* an unpublished decision from another judge in this district and in which a liquidated-damages provision was held unenforceable.[56] The *Prothera* parties settled a trademark-infringement suit and agreed that the defendant was prohibited from reselling, advertising, or listing for sale any of the plaintiff's products.[57] The agreement prescribed liquidated damages in "an amount equal to $500 for each separate breach for each day of breach" and offered the explanatory example that, "if [defendant] is in breach with respect to three different [p]roduct[s] for a period of 10 days, [defendant] will be deemed to have committed 30 breaches and be

---

[52] ECF No. 112 at 27.

[53] *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993) (citing *Haromy v. Sawyer*, 654 P.2d 1022, 1023 (Nev. 1982)).

[54] *Id.* (quoting 22 Am. Jur. 2d *Damages* § 684 (1980)).

[55] *Id.*

[56] ECF No. 112 at 28 (citing *Prothera, Inc. v. Ye*, 2020 WL 3073345 (D. Nev. June 10, 2020)).

[57] *Prothera*, 2020 WL 3073345, at *4.

13

subject to [l]iquidated [d]amages of $6,000.00."[58] The court found that the daily multiplier and the broad reach of the provision—accumulating damages every day that the defendant merely advertised, but did not sell, any of plaintiff's products—was divorced from any lost profits or actual damages that the plaintiff may have incurred and held that it was an unenforceable penalty.[59]

The liquidated-damages provision in this case does not suffer from the same defects. It does not explain what precise actions may constitute a separate violation sufficient to trigger such damages. And *Prothera* is materially distinguishable in another key way: although the judge in that case was able to determine that the liquidated-damages amounts were disproportionate to the plaintiff's actual damages, the record prevents me from doing that here. PDS contends that, because ProDox failed to produce evidence of actual damages—either through PDS's profits or ProDox's lost sales—ProDox cannot prove that the liquidated damages amounts are reasonable.[60] But the burden to prove disproportionality is on PDS, not ProDox.[61] Plus, PDS and ProDox agreed that the liquidated-damages figures in this agreement are "fair and reasonable" and that determining actual damages would be "difficult and burdensome for all

---

[58] *Id.*

[59] *Id.* at *5.

[60] PDS also argues that, because there are jury instructions and treatises on the topic of damages in trademark-infringement cases, those damages are "neither uncertain not immeasurable." ECF No. 112 at 29–30. But the Ninth Circuit has acknowledged that "proof of actual damage is often difficult" in trademark-infringement cases, *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179 (9th Cir. 2016), and the fact that many have attempted to simplify damages calculations for juries and lawyers does not prove that those damages are easily ascertainable in this case.

[61] *See supra* at page 13.

concerned."[62]  So I cannot conclude on this record that the liquidated-damages provision in this contract is an unenforceable penalty.

### 5. Genuine disputes preclude summary judgment on breach-of-contract damages.

ProDox asks me to summarily award it $1,512,500 in liquidated damages "as calculated under the [a]greement based on the minimum number of 600 unique violations that ProDoc | Kytel admits it committed."[63]  ProDox points to PDS's 2017–2020 customer list, the portions of Kyle Lum's deposition testimony in which he identifies the non-California customers on that list, and screenshots of various customer websites to claim that PDS received income from "at least 15 customers outside of California 600 times between 2017 and 2020 alone."[64]  Even assuming that the agreement permits ProDox's method of considering each such incident as a separate violation, ProDox's proffered evidence is plagued with too many genuine disputes to permit me to summarily adjudicate damages.  For example, if I take ProDox at its word that it identified the proper clients on PDS's customer list, that list shows only 569 separate transactions, not 600.[65]  And Lum's declaration states that ProDox identified three clients that should not be on that list because PDS served those clients only in California.[66]  Deleting those clients and their transactions from ProDox's violations list shrinks it to 312.  ProDox then identifies one other customer that it contends was also a non-California customer, but that client

---

[62] ECF No. 66-1 at 24.
[63] ECF No. 108 at 22.
[64] *Id.* at 8.
[65] *See* ECF No. 88 at 2–5.
[66] ECF No. 98-12.

15

is not mentioned in Lum's deposition.[67] Without that customer, the list dwindles down to 309. ProDox's attempt to round up to 600 in its proof of damages is unsupported by the evidence. There thus remain too many questions of fact regarding the amount of liquidated damages that ProDox is owed, so I deny summary judgment on the element of damages for the contract breach.

**B.     PDS is entitled to summary judgment on ProDox's implied-breach claim.**

To prevail on a claim for contractual breach of the implied covenant of good faith and fair dealing, a plaintiff must demonstrate that the defendant complied with the express terms of the contract but deliberately and intentionally "contravene[d] the intention and spirit of the contract."[68] PDS contends that ProDox cannot rely on an implied-breach claim to get around the notice-and-cure provision in the contract. ProDox does not respond to this argument or explain how its implied-breach claim differs from its breach-of-contract claim.[69] And while ProDox moves for summary judgment on all of its claims, it does not present evidence or argument demonstrating what PDS did to separately breach the implied covenant of good faith and fair dealing. So because ProDox fails to present evidence to show that PDS breached the implied

---

[67] ProDox attaches the contact-us page of some of these customers in its attempt to prove that those customers don't have office locations in California and therefore must be PDS's customers outside of California. ProDox tries to infer far too much from this limited information, so I do not consider that evidence.

[68] *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

[69] PDS contends that, under Local Rule 7-2, ProDox's failure to file a response to PDS's argument "constitutes a consent to the granting of the motion." ECF No. 113 at 22 (citing L.R. 7-2). PDS ignores the qualifier in Local Rule 7-2, which clearly states that "[t]he failure of an opposing party to file points and authorities in response to any motion, *except a motion under Fed. R. Civ. P. 56* . . . , constitutes a consent to the granting of the motion." L.R. 7-2 (emphasis added). So I do not grant PDS relief under that rule.

covenant in a manner separate from its breach of the agreement's express terms, I grant PDS summary judgment on ProDox's implied-breach claim.

### C. PDS is entitled to partial summary judgment on actual damages for ProDox's trademark-infringement and unfair-competition claims.

PDS argues that ProDox is estopped from bringing its trademark-infringement and unfair-competition claims because the parties executed a settlement agreement that covers their trademark dispute.[70] PDS contends that, "[s]o long as the parties are using the [trade]mark in a manner permitted by the [] agreement, the trademark owner is contractually prohibited from asserting trademark infringement."[71] But as discussed supra, PDS was not using the mark in a manner permitted by the agreement, so PDS's estoppel argument does not apply.[72]

PDS also contends that it is entitled to summary judgment on these claims because ProDox failed to provide a computation of actual damages under the Lanham Act.[73] But "actual

---

[70] ECF No. 66 at 20–21.

[71] *Id.* at 21 (quoting *Russell Road Food & Bev., LLC v. Spencer*, 2014 WL 1809697, at *4 (D. Nev. May 6, 2014) (citation omitted)).

[72] PDS also argues, only in its reply in support of its motion and its response to ProDox's motion, that ProDoc | Kytel is not a confusingly similar mark to the "ProDoc" mark that was the subject of the settlement agreement. Again, PDS ignores that the settlement agreement contains a provision in which "PDS agrees to waive the defense[] of . . . likelihood of confusion" "in the event that a suit is filed to enforce the terms of the [a]greement and specifically as described in Section 4(c)." ECF No. 66-1 at 22.

[73] PDS cites to the Lanham Act's damages statute in its argument in this section but does not clearly state that its argument applies only to these claims. To the extent PDS meant to raise the issue of actual damages to seek summary judgment on ProDox's breach claims, I am not persuaded. The liquidated-damages provision supplies the amount of damages in the event of each breach, and ProDox relies on customer lists provided in discovery to calculate the amount it requests. It also informed PDS in its demand letter that it intended to seek damages for each solicitation of non-California customers while it was using the ProDoc | Kytel mark. So PDS is not entitled to summary judgment on damages for ProDox's breach-of-contract claim based on ProDox's failure to provide a computation of damages.

17

damages are not a required element for establishing trademark infringement."[74]  If ProDox can establish liability on its claims, it may be entitled to other remedies available under the Lanham Act—indeed, ProDox primarily seeks injunctive relief for PDS's alleged violations of its trademark rights.[75]  So PDS's arguments do not merit summary judgment in its favor on the question of liability for those claims.

But PDS is entitled to summary judgment on ProDox's entitlement to a separate damages award under the Lanham Act.  "The Lanham Act allows a plaintiff who establishes [trademark infringement] 'to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.'"[76]  The availability of such damages is "subject to the principles of equity,"[77] and the plaintiff bears the burden of proving them.[78]  But as to disgorgement of profits, a plaintiff need only prove the defendant's sales.[79]  The burden then shifts to the defendant to "prove all elements of cost or deduction claimed."[80]

ProDox has failed to provide any evidence of actual damages resulting from PDS's alleged infringement.  It did not produce records of its lost profits, PDS's sales, or any other proof of actual damages it incurred through PDS's use of the ProDoc mark.  Because ProDox has not met its burden to point to any evidence of its lost profits or PDS's ill-gotten gains from its

---

[74] *See Shakopee Mdewakanton Sioux Cmty. v. FBCV, LLC*, 2011 WL 4527177, at *2 (D. Nev. Sept. 26, 2011).

[75] *See* ECF No. 1 at 7; *see also* 15 U.S.C. § 1116 (providing for injunctive relief "upon a finding of a violation" of the Lanham Act).

[76] *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting 15 U.S.C. § 1117(a)).

[77] 15 U.S.C. § 1117(a).

[78] *Rolex Watch U.S.A. Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).

[79] 15 U.S.C. § 1117(a).

[80] *Id.*

use of the ProDoc mark, I grant PDS summary judgment as to those damages on ProDox's trademark-infringement claims.[81]

### D.  This case moves forward on ProDox's trademark-infringement, unfair-competition, and declaratory-judgment claims and on breach-of-contract damages.

While ProDox moves for summary judgment on all of its claims, it only addresses the breach-of-contract claim in its motion.  So, to the extent ProDox seeks summary judgment on its trademark-infringement, unfair-competition, and declaratory-judgment claims, I deny the motions as too undeveloped to warrant relief.  This case thus proceeds to trial on the remaining portions of those claims, as well as on damages for ProDox's breach-of-contract claim.  But first, I refer this case to the magistrate judge for a mandatory settlement conference.

## Conclusion

IT IS THEREFORE ORDERED that ProDox's motion for summary judgment **[ECF No. 87] is GRANTED as to liability for its breach-of-contract claim and DENIED in all other respects**.

IT IS FURTHER ORDERED that PDS's motion for summary judgment **[ECF No. 66] is GRANTED as to (1) ProDox's claim for breach of the implied covenant of good faith and**

---

[81] PDS further argues that "summary judgment of no willfulness is proper" on ProDox's trademark claims.  ECF No. 66 at 25.  A finding of willfulness was once considered a "prerequisite" for courts to order disgorgement of profits under the Lanham Act.  *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 441 (9th Cir. 2017), *abrogated by Romag Fasteners, Inc. v. Fossil*, 140 S. Ct. 1492 (2020).  The Supreme Court has since held that willfulness cannot be an "'inflexible precondition to recovery' of a defendant's profits." *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 38 (9th Cir. 2022) (quoting *Romag*, 140 S. Ct. at 1497)).  Because I find that ProDox is not entitled to recover these damages from its trademark-infringement claim, I need not and do not consider PDS's willfulness arguments.

fair dealing and (2) actual damages for ProDox's trademark-infringement and unfair-competition claims. The motion is **DENIED** in all other respects.

**This case proceeds on ProDox's claims for trademark infringement, unfair competition, and declaratory judgment, and on the question of damages for ProDox's breach-of-contract claim.**

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**. The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
September 22, 2022